## *In re* WILDENHUS and others.

*(Circuit Court, D. New Jersey.   November 9, 1886.)*

1. HABEAS CORPUS—JURISDICTION OF UNITED STATES COURTS AND JUDGES.
     W. and F., being subjects of and domiciled in the kingdom of Belgium, en-
     gaged in a fight on board of a Belgian ship while lying moored to a wharf in
     Jersey City, and within the territorial jurisdiction of Hudson county, New
     Jersey. F. was stabbed with a knife and killed by W. Both belonged to
     the crew of the ship, and the fight took place below deck, the only witnesses
     present being other members of the crew. W. was arrested and committed
     to jail by the local authorities of the county, on the charge of murder. The
     Belgian consul, for the states of New York and New Jersey, sued out a writ
     of *habeas corpus* for the discharge and surrender of the prisoner on the ground
     that, under the law of nations and by force of existing treaties between the
     United States and Belgium, W. was entitled to be sent home for trial under
     the laws and by the tribunals of his own country. *Held,* that section 753,
     Rev. St. U. S., giving power to the courts and judges of the United States to
     grant writs of *habeas corpus* in certain cases, therein specified, does not ex-
     tend to the case of the prisoner.

2. ARTICLE 11 OF THE TREATY OF 1868 BETWEEN THE UNITED STATES AND BEL-
     GIUM CONSTRUED.
     Article 11 of the treaty of 1868 between the United States and Belgium does
     not confer authority on foreign consuls to take cognizance of offenses com-
     mitted against the local laws of this country. It makes no provision for the
     creation of a consular court, nor does it authorize the consul to act even as a
     committing magistrate.

*Habeas Corpus.*
*Coudert Bros.,* for petitioner.
*Charles H. Winfield* and *William Y. Johnson,* Asst. Atty. Gen., for
the State.

WALES, J.   This writ was directed to the keeper of the jail of Hud-
son county, New Jersey, on the petition of Charles Mali, Belgian con-
sul for the states of New York and New Jersey, in order to obtain the
discharge and surrender of Joseph Wildenhus, who is charged with
the crime of murder, and of two other persons who are detained, in
default of bail, as witnesses for the state.   Copies of the warrants of
commitment, which are in regular form, are annexed to the return to
the writ, and from these, and the statements in the petition, it ap-
pears that on the sixth of October of the present year, while the Bel-
gian steam-ship Noordland lay moored to her wharf in Jersey City,
New Jersey, an altercation took place between two of the crew, to-wit,
the above-named Joseph Wildenhus and one Figens, in which Wilden-
hus stabbed Figens with a knife, from the effects of which the latter
soon after died.   Both parties were Belgian subjects, and domiciled in
that kingdom.   The affair occurred below the deck of the vessel, and no
one but members of the crew were present.   Wildenhus was arrested
and committed to jail by the public authorities of Jersey City as if
the offense had been committed in the body of Hudson county; and
it is proposed that the offender shall be tried and otherwise dealt with
by the state of New Jersey.

It is claimed that, under the rules of international law, and also by virtue of treaties now in force between the United States and Belgium, the offense in question is cognizable solely under the laws of Belgium, and that, therefore, the imprisonment is unlawful. The question, it is contended, is not whether a vessel of a nation, by going into the port of a foreign state, becomes subject to the municipal laws of that state, nor whether the state of New Jersey could take cognizance of the crime in the absence of the exercise of authority by the foreign state, but whether the foreign state, when it may choose to assert the privilege, has the exclusive right to control the internal affairs of its own ships, both civil and criminal, even when in the ports of another state, provided the tranquility of such other state is not involved, or persons entitled to its protection concerned. It is further claimed that under these circumstances the jurisdiction of the foreign state is exclusive. These are general propositions. The discharge and surrender of the prisoners are demanded on two distinct and independent grounds:

"*First*, because they are confined in prison by the state of New Jersey, in violation of a treaty of the United States; and, *second*, because, being subjects of a foreign state, and domiciled therein, they are in custody for an act done under a privilege, protection, or exemption claimed under the sanction of such foreign state, the validity and effect whereof depend upon the law of nations; namely, the privilege of a trial of the offense before a tribunal existing under the laws of Belgium, and of exemption from the jurisdiction of the local tribunals of this country."

And it is contended that, under the express words of the statute, (section 753, Rev. St. U. S.) defining the jurisdiction of this court in cases of *habeas corpus*, either of these grounds is sufficient, and that both must fail before the writ can be dismissed. The statute referred to reads as follows:

"The writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court, or judge thereof; or is in custody in violation of the constitution or of a law or treaty of the United States: or, being a subject or citizen of a foreign state, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission or order or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations, or unless it is necessary to bring the prisoner into court to testify."

The plain construction of this section restricts the jurisdiction of the court to such cases as come within some one of the causes of detention or imprisonment therein specifically mentioned, and we are not at liberty to go beyond them, although, under special circumstances and for reasons of public policy, we might entertain the opinion that a prisoner ought to be discharged. In regulating the power to issue the writ, one purpose, if not the chief one, of the

statute, is to avoid and prevent any interference or clashing of authority between the courts of the United States and those of the several states, and the law should be carefully administered with that intent in view. The interpretation and application of the law of nations, which could be considered in this form of proceeding, can only arise under the conditions referred to in the statute; and, as these conditions in no way relate to or concern the cause of Wildenhus' imprisonment, they are not open for discussion here; for it cannot be pretended that he committed the act for which he is in custody. "under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission or order or sanction of" Belgium, "or under color thereof;" and it is only the validity and effect of such commission, order, or sanction, so far as they depend on the law of nations, which, under the provisions of the statute, can now be inquired into by this court. Admitting, however, that by the law of nations the accused is entitled to be tried by a tribunal of his own country, that fact can be brought to the notice of the court of New Jersey in which he may be arraigned, and he will receive the full benefit of it; or, relying on his right and privilege under that law, to be tried in Belgium, he may apply for a discharge from his present imprisonment on a writ of *habeas corpus* issued by the state court. On the construction we have given to the statute we have not the power to order Wildenhus' discharge on this ground; and it is unnecessary, therefore, to review the very able and instructive argument contained in the brief of his counsel on this branch of the case. It is enough to say that we can find no authority in the statute for this court to administer the law of nations in the present proceeding.

If, as contended, the accused is in custody in violation of a treaty of the United States, then it would be the duty of the court to order his surrender. But is this contention sustained by the language or spirit of article 11 of the treaty of 1868 between the United States and Belgium, which is in these words:

"Consuls general, consuls, vice-consuls, and consular agents shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall alone take cognizance of differences which may arise, either at sea or in port, between the captains, officers, and crews, without exception, particularly in reference to the adjustment of wages and the execution of contracts. Neither the federal, state, nor municipal authorities or courts in the United States, nor any court or authority in Belgium, shall, on any pretext, interfere in these differences."

The entire purport of this article is too clear to admit of any doubt. The negotiators of the treaty never intended to confer, nor have they, by the most liberal and reasonable interpretation which can be given to it, conferred authority on their consuls to take cognizance of crimes and offenses committed against the local laws of either country. The article contains the usual provisions for the settlement of such "differences" as ordinarily arise between officers and crews in relation

to work and wages and discipline, which is inserted in nearly the same words in many of the treaties between the United States and other commercial nations. The supposition that the phrase, "exclusive charge of the internal order of the merchant vessels," and the word "differences," were designed to embrace crimes, is excluded by what follows them; since, if such a meaning could be applied, then the courts of neither country can "on any pretext interfere," and the consuls "shall alone take cognizance" of crimes committed, either at sea or in port, by and among the officers and crews of vessels belonging to their respective countries, provided always that "the peace and tranquility of the port" are not disturbed, and no wrong or injury is inflicted upon any person not belonging to the ship. It is conceded that Wildenhus' offense was committed within the territorial jurisdiction of New Jersey, but it is insisted that under the circumstances mentioned, and by force of the existing treaty, it becomes exclusively cognizable under the laws of Belgium. The consul does not claim the power to try him, but to sit merely as a committing magistrate. In reply to this it can be said that the treaty article makes no provision for the creation and organization of a consular court, nor does it even authorize the consul to act as a committing magistrate.

The facts attending the commission of the alleged crime, for which Wildenhus is in custody, do not present such a case as is contemplated by the statute for the interference of this court. The suit must therefore be dismissed for want of jurisdiction, and the prisoners remanded.